## JOHN HENRY SCHNEPFE *vs.* CAROLINE M. SCHNEPFE.

*Husband and Wife—Bill to Restrain Defendant from Disposing of His Property in Violation of Antenuptial Agreement— Costs—Exclusion of Incompetent Evidence when Testimony taken in Open Court in Equity Cause.*

By an ante-nuptial contract, the rights of each party in the property of the other, by way of dower or curtesy, were relinquished, and it was provided that in case the wife survived the husband, the sum of twelve thousand dollars should be paid to her out of his estate, and in case of her death in his lifetime, the said sum should be paid to her children by a former marriage, to be apportioned among them in such manner as the husband might deem proper. Sometime after the marriage, the wife filed a bill for a divorce *a mensa* and alimony, which asked for an injunction to restrain the defendant from disposing of his property so as to defeat the plaintiff's rights under the marriage contract. The evidence showed that the defendant had conveyed the greater part of his estate to his sons, but that he had retained in his own name property considerably above twelve thousand dollars in value, and that he had so done for the purpose of meeting his obligation under the contract. The trial Court denied the right of the plaintiff to a divorce and to alimony, but directed the defendant to bring into Court the sum of twenty thousand dollars, to be invested in city stock, in order to secure the performance of the marriage contract; the stipulated sum, in case of plaintiff dying before the defendant, to be paid to her children. *Held,* that this decree was not proper under the circumstances of the case, since there was no evidence of any purpose or conduct on the part of the defendant to defeat the rights of the plaintiff under the ante-nuptial contract, and since the decree sequesters twenty thousand dollars of the defendant's property to secure the payment of twelve thousand dollars, and imposes on him a liability different from that created by the contract.

Upon a bill for divorce and alimony, the Court may award costs in its discretion to or against either party, or may divide the same. In this case, where both parties encumbered the record with much incompetent and irrelevant evidence, each party is required to pay half of the costs.

Under Code, Art. 16, sec. 243, allowing the testimony of witnesses in an equity cause to be taken orally in open Court, and providing that evidence so taken shall be written down as delivered, the trial Court may direct that, when testimony is taken under this provision, if a question

propounded to a witness is ruled inadmissible upon objection being made, the answer thereto need not be written down or included in the record, except at the request and expense of the party asking the question.

*Decided May 13th, 1908.*

Appeal from the Circuit Court No. 2, of Baltimore City (GORTER, J.)

The decree referred to in the opinion of the Court is as follows:

This cause coming on to be heard, and the testimony and arguments of counsel being considered it is this 17th day of October, 1907, by the Circuit Court No. 2, of Baltimore City, ordered adjudged and decreed. That the defendant John Henry Schnepfe at once bring into this Court, so much cash as may be necessary to purchase stock of the city of Baltimore, to the amount or extent of the cash value of twenty thousand dollars, such purchase to be made by the clerk of this Court, who is hereby directed to so endorse or mark the same that such stock will stand to the credit of the above entitled cause and for the use and benefit of Caroline M. Schnepfe, the plaintiff, and her children, under the terms and provisions of the marriage contract, between the said plaintiff and the defendant filed in this cause; and upon the death of the said defendant, said stock is to be turned over to and be sold by the executor or administrator of said defendant, John Henry Schnepfe, and out of the proceeds of said sale the sum of twelve thousand dollars in cash shall be at once paid by such executor or administrator unto the said Caroline M. Schnepfe, if alive, and if dead unto her children therein named, under the terms and provisions of said marriage contract; the said clerk being hereby directed to pay over during the life time of the said John Henry Schnepfe, and unto him all revenue or income realized from said stock, his receipt therefor being a full acquittance and discharge thereof. That all other relief prayed for by the said plaintiff in this proceeding is hereby denied.

The said defendant is hereby required to pay the costs incurred in this proceeding, including all stenographic charges.

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER, BURKE and WORTHINGTON, JJ.

*S. S. Field* (with whom were *Gill & Preston* and *A. W. Schnepfe* on the brief), for the appellant.

*William Colton* and *Rignal W. Baldwin*, for the appellee.

WORTHINGTON, J., delivered the opinion of the Court.

This is an appeal from Circuit Court No. 2, of Baltimore City. The bill of complaint was filed in that Court by the appellee, Caroline M. Schnepfe, against her husband, John Henry Schnepfe, the appellant, on May 1st, 1907.

The prayers of the bill are for a divorce *a mensa et thoro*, for alimony and counsel fees; for an injunction to restrain the defendant from disposing of his property or estate in an effort to defeat, as alleged, a marriage contract entered into by the parties before their marriage, and for general relief.

A vast amount of testimony was taken in the case, the record consisting of 532 printed pages; a very large part of this testimony being wholly irrelevant and immaterial to the matters in dispute between the parties.

We have gone through this immense record, however, and from it learn that the material facts necessary to be considered by us are as follows: The parties are residents of Baltimore City, and were married on July 11th, 1904. Both of them had been previously married. Both had reached the age of 65 years at the time of their marriage to each other, and both at that time had grown children.

The complainant (appellee here) had been a widow for about twenty years, and during that period, as well as during her former husband's life time, had contributed to the support of the family, by attending and keeping a butcher's stall in Lexington Market. Besides supporting her family from the income thus derived, she testifies that she saved a thousand dollars a year from her business over and above expenses, so that at the time of her marriage to the defendant she had accumulated considerable property.

The defendant (appellant here) is a retired butcher, who had made a large fortune in the business before his retirement

therefrom.    Defendant's first wife, who had died about a year previously to the marriage of the parties to this proceeding, was a sister of the complainant.    It may be well also to state n this connection that some at least of defendant's grown sons are shown by the evidence to be thrifty and well to do in their own right.

Before entering into the marriage relation with each other the parties executed a marriage contract, in and by which the complainant relinquished all the right, title and interest, which she should "acquire by way of dower in the estate of John Henry Schnepfe, her prospective husband, and he, on his part, agreed to relinquish all right, title and interest, which he, by reason of said marriage, would acquire by way of curtesy in the estate of his wife, and she was given power to dispose of her property, real and personal, by deed or will, notwithstanding the coverture."

It was further agreed that the husband should pay to his wife the sum of $12,000, to be paid to her upon his death, "out of whatever estate the said John Henry Schnepfe may die seized of, said payment to be made prior to the distribution of said estate."

. It was further agreed that in case his wife should die during his lifetime, and before the $12,000 should be paid, then the said sum was to be paid to the children of his wife by her former husband, to be apportioned among the said children in the way and manner, as to amounts, as he might deem just and proper.

The testimony in the case was taken orally before the learned Judge in the Court below, who at its conclusion passed the decree which is set out in the report of this case preceding this opinion.

It will be seen by reference thereto that the learned Judge denied all the relief specifically prayed for in the bill of complaint; that is to say, the prayer for divorce *a mensa et thoro;* the prayer for alimony and counsel fees, and the prayer for an injunction to restrain the defendant from disposing of his property for the purpose of defeating the marriage contract,

were each and all denied, but in lieu of such relief, the defendant is required to bring into Court enough of cash to buy stock of the city of Baltimore "to the amount or extent of the cash value of $20,000."

The Clerk of the Court is then required to act as trustee of this fund, and to pay the income therefrom to the defendant during his lifetime, and at his death to turn the said stock over to his executors who are directed to sell the same and out of the proceeds to pay the sum of $12,000 to his widow, or if she be dead, to her children "therein named."

Several objections have been urged by appellant's solicitors to the validity of this decree, but without considering all of these, we think the decree is unsustainable for the reasons that will now be stated.

In the first place there is nothing in the evidence to warrant the belief that the defendant intends to dispose of his property for the purpose of defeating the rights of his wife under the marriage contract. It is true he has divided among his children a large part of his fortune, but he expressly reserves fifty-two shares of stock in the Drovers and Mechanics National Bank of Baltimore, which according to the testimony is worth $240 per share, or more than $12,000 in all, for the purpose of meeting his obligation to his wife under the antenuptial agreement. Besides these shares of stock, which he has in a manner set aside for the purpose mentioned, he still owns a stall in Hollins Market worth $80 per year; two Western Maryland R. R. bonds of the par value of $1,000 each, and has besides about $1,700 in bank to his credit.

In addition to these assets which he still owns in his own right, the defendant has placed in the hands of two of his sons, stocks, bonds and money to the value of about $81,000 which they hold under a verbal trust to dispose of according to their father's wishes. When questioned on the witness stand about this large fund, these sons did not hesitate to tell every circumstance connected with its transfer to them. They stated that their father had put into their care and keeping unconditionally 148 shares of the stock in the Drovers and Mechanics

National Bank which were worth in the aggregate about $35,500; also two one thousand dollar bonds of the Virginia Midland Railway Company, worth more than par; also sixteen shares of stock of the Union Trust Company worth about $65 per share; also $42,318.90 in money deposited in the German Savings Bank.

When asked if he put this money out at interest, the son, then under cross-examination answered, "It stayed put at interest." When asked who collected the interest, the witness answered, "Interest on interest is added."

Q. "What did you do with it?"

Ans. "Let it stay there."

Q. "Where?"

Ans. "In the German Savings Bank."

The fund was to be kept by these two sons as trustees, as long as their father lived, and then divided amongst all his children, in accordance with his wishes.

The examination took place in October, 1907, nearly one year after the fund had been placed in their hands, and it still remained at interest, and "interest on interest was being added."

We do not discover in the whole conduct of the defendant any purpose to defeat the rights of his wife under the antenuptial agreement entered into between them. On the contrary when he was considering the propriety of putting the bulk of his property and estate in possession of two of his sons, as above mentioned, he was advised to keep enough in his own right to meet his obligation to his wife under the antenuptial agreement, and he expressly reserved the bank stock, worth then more than $12,000 and yearly increasing in value, for that very purpose. There was no intimation any where in the evidence that the defendant had evinced any intention of disposing of this stock, and so far as appears, it will remain intact for the purpose for which it was set aside.

In the second place we do not find any warrant for the decree appealed from in this case, under any recognized head of equity jurisdiction. It is true that the absence of precedent

does not, of itself, determine the question of jurisdiction, and it is also true that Courts may amplify remedies and apply general principles for the advancement of substantial justice. If this were not so and Courts were confined to particular precedents, there would be no power to grant relief in new cases constantly occurring. *Hamilton* v. *Whitridge*, 11 Md. 128.

But precedents are not to be wholly overlooked, and departures therefrom are only allowed when wrongs may thereby be prevented or redressed, consistently with established equitable principles.

Even the writ of injunction will not be awarded in new or doubtful cases, not coming within the well established principles of equity. *Hardesty* v. *Taft*, 23 Md. 512.

We have examined the references cited in the appellee's brief, but do not find in them any precedent or authority for the decree passed in this case, nor can we discover any established doctrine of equity to uphold such a decree. Even if the pleadings and evidence had warranted the granting of an injunction, we should still be obliged to hold the decree passed herein unsustainable, for while the writ of injunction which is specifically prayed for is denied, the decree goes much further and undertakes to impound or sequester $20,000 of defendant's money for and during his natural life, for the purpose of meeting an obligation of his to the amount of but $12,000.

The appellee's counsel contend, however, that the decree is in effect the specific enforcement of the ante-nuptial contract, and therefore clearly within the powers of a Court of equity. But we think if allowed to stand the decree would in effect make a different contract from that entered into by the parties. Not only does it undertake to sequester $20,000 to pay $12,000, but its effect would be to deprive the defendant of the use of the whole sum of $20,000 during his life time, assuming that he is able to comply with its terms, and to create a trust for the benefit of his wife though no trust or security is provided for in the contract, and it also deprives him of the power to apportion the $12,000 among the children of the complainant by her former husband, in the way and manner

as to amounts, as he might deem just and proper, in case he should survive her, as provided in the contract.

It should also be remembered that the defendant did not retain in his own right as much as $20,000 and that the two sons who hold the large sum in trust, are not parties to this proceeding, and therefore unless the sons should choose, under a decree against their father to return a part of the fund in their hands to him, it would be impossible for him to comply with the decree.

Without extending the argument we are all of the opinion, for the reasons already assigned, that the decree should be reversed.

As there is no appeal from that part of the decree denying the prayers for a divorce *a mensa et thoro*, for alimony and counsel fees, and for an injunction, we are not called upon to review the testimony in regard thereto.

We feel constrained to say, however, that we consider it unfortunate for both parties that this case was ever brought into Court, for although the parties were living separate and apart from each other, the husband was sending to his wife $100 regularly each month for her support and, as we have seen, had carefully provided to meet his obligation to her under the anti-nuptial agreement.

As the children of the parties are first cousins and on friendly terms with each other, every difference or dispute should have been amicably adjusted through their intervention.

We cannot conclude this opinion without expressing our strong disapproval of the practice which seems to some extent to prevail, when witnesses are examined in open Court, under sec. 243, Art. 16, of the Code of 1904, of permitting all testimony, no matter how incompetent, irrelevant or immaterial it may be to be given in evidence, without restriction or restraint, thereby adding enormously to the expense of the litigation, greatly impeding the progress of the cause, and unnecessarily consuming much valuable time of the lower Court, as well as of this Court in case of an appeal. The Code provides that "the evidence so taken shall be written down as

delivered by the witnesses, by such person and in such manner as the Court may have by special order or general rule directed."

The manner of bringing up appeals in such cases was adverted to in *Lemmert* v. *Lemmert,* 103 Md. 65.

We think that the lower Court may under the Code provision mentioned, by special rule or general order, direct that where testimony is taken in open Court under said provision of the Code, and a question propounded to any witness is objected to and ruled inadmissible, the answer thereto need not be written down or included in the record, except at the request and expense of the party propounding the same.

The exclusion from the record of such testimony as the lower Court deems inadmissible, except as provided in such rule, would very materially improve the practice under the section of the Code mentioned.

As the wife is usually a favored party in respect to the allowance of costs, it frequently happens that the husband is obliged to bear the whole expense of a divorce suit, whether he be the successful or unsuccessful party, but the Court may award costs in such cases in its discretion, for or against either party, or may equally divide the costs, or require each party to pay his own costs. 14 *Cyc.,* 738.

The more important rules governing the production of evidence in equity are similar to those applicable to cases at law, and may be stated to be, *First,* that the evidence offered must correspond with the material allegations of the bill of complaint, and be confined to the points at issue; *Second,* that the best evidence of which the case is in its nature susceptible, must be produced; and *Third,* that the burden of proving an issue lies on the party holding the affirmative.

In this case both parties have flagrantly offended against these rules, and both have thereby contributed to the unnecessary bulk and expense of the record.

While reversing the decree, we will therefore, require each party to pay one-half the costs.

*Decree reversed, and bill dismissed, each side to pay one-half the costs in this Court and in the Court below.*