# CARROL BRENT ROBERTS *v.* NORMA MARIE ROBERTS.

[No. 13, January Term, 1931.]

*Decided March 20th, 1931.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Charles S. Hayden* and *Horton S. Smith,* for the appellant.

*Hiram C. Griffin,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

On March 28, 1929, Norma Marie Roberts, the appellee in this case, filed in the Circuit Court of Baltimore City her

bill of complaint against Carrol Brent Roberts, her husband, who is the appellant. In it she alleged their marriage, that of the marriage three children were born who were living and in her custody; that the appellant on or about March 3rd, 1929, without just cause or reason, abandoned and deserted her; and that such abandonment and desertion were final and without hope or expectation of reconciliation. Upon these allegations she asked for a divorce *a mensa et thoro,* the custody of their infant children, permanent alimony and alimony *pendente lite,* counsel fees, and money to prosecute the suit. The defendant in his answer denied the alleged desertion, and on May 31st, 1929, filed a cross-bill against his wife in which he alleged that she had refused him "complete marital intercourse" for a period of ten or eleven years; that since November, 1928, she had denied him all sexual contact whatever, and had abandoned and deserted him; that such abandonment and desertion had continued uninterruptedly for at least three years, was deliberate and final and beyond any reasonable hope of reconciliation; and prayed that he be divorced *a vinculo matrimonii* from the appellee and awarded the custody of their children. The appellee filed a combined answer and demurrer to the crossbill, in which she denied that the facts alleged in it entitle the appellant to the relief prayed, and denied the charge that she had refused him "complete marital intercourse," and denied that she had abandoned him. The court ignored the demurrer to the cross-bill, but tried the case on the issues of fact raised by the pleadings, and at the conclusion of the trial decreed that the appellee be divorced *a mensa et thoro* from the appellant, that she have the custody of their three children, and that—

> "the said Norma Marie Roberts, the complainant in said original bill of complaint, is entitled to alimony from the said Carrol B. Roberts and that in payment of said alimony the said Carrol B. Roberts shall pay the water rent, state and city taxes and alley paving taxes assessed against the property known as No. 3822 Bonner Road, Baltimore, Maryland, for the year 1929

and all interest and penalties due thereon until the same are paid, and shall pay the semi-annual installment of the ground rent due on said premises on March 1, 1930, amounting to forty ($40.00) dollars and shall regularly hereafter pay when due and payable the water rent, state and city taxes, ground rent and other public charges that may be levied or assessed against said property, and shall pay unto Martin Schweitzer and Mary J. Schweitzer, his wife, as and when due and payable the interest due them under a mortgage on said property held by them on which there is a principal amount due of seven hundred ($700.00) dollars, and shall pay unto Sarah R. Thieme, as and when due and payable the interest due her under a promissory note for five hundred ($500.00) dollars held by her and signed by the said Norma Marie Roberts and Carrol B. Roberts; and shall also pay unto the said Norma Marie Roberts direct to her and not through the probation department the sum of eighteen ($18.00) dollars per week for her support and for the support and maintenance of the said three minor children, all of said payments to continue until the further order of this court.

"And it is further adjudged, ordered and decreed that the said Norma Marie Roberts and said three minor children are entitled to the exclusive use and possession of the said property known as No. 3822 Bonner Road, Baltimore, Maryland, the title to which property stands in the names of the said Norma Marie Roberts and Carrol B. Roberts as tenants by the entireties, in which property said Norma Marie Roberts and minor children now reside; it not being the intention, however, in any manner to change or disturb the character of the legal title of said property."

Assuming that the demurrer was waived, this appeal from the decree presents these questions: (1) Was the evidence sufficient to support so much of the decree as granted to the appellee a divorce *a mensa et thoro* from the appellant? (2)

Was the appellant upon the pleadings and the evidence entitled to the relief prayed in his cross-bill? (3) Assuming that the appellee was entitled to alimony, was the court authorized to award it in the form announced in the decree? and (4) Is the appellant chargeable with the maintenance of his daughter, Ethel Thieme Roberts, who became eighteen years of age on October 27, 1930.

The evidence relating to the first question may be classified under two captions: (a) Did the appellant in fact abandon and desert the appellee? and (b) If he did, was the abandonment and desertion justified? There is no real dispute as to the facts relating to the separation of the parties, and they may be thus stated:

Roberts is a traveling salesman in the employ of the Baltimore branch of the United States Rubber Company, and in that employment earns, in addition to his expenses, $200 a month. He married the appellee on February 22nd, 1911, and from that time until March 4th, 1929, lived with her in Baltimore. There are three children of the marriage, a daughter and two sons, who at the time the case was heard were aged respectively seventeen, fourteen, and eleven years, According to his means Roberts appears to have supported his family in reasonable comfort, to have been attached to his children, and until late years to have lived happily with his wife. His business required him to be away from his home much of the time, but that was unavoidable and was accepted as a natural and necessary incident of their family life. But for reasons more or less obscure, for some time prior to March 4th, 1929, the relations between Roberts and his wife underwent a change. He became moody, irritable. discontented, and fault finding, but even then there was no indication that he intended to abandon his home. On that date he left his home on one of his usual business trips, and it is conceded that when he left he had no intention of finally separating from his wife. But during his absence he received a letter, dated March 13th, 1929, from her, to which on March 18th he replied by a letter in which, after complaining of her conduct, he said:

"I have thought and thought about our conversation, and we both are very far apart in our ideas and lives. It was in your place to make a home, and respect it, and you have not done this.

"I have given the very best years of my life to you, the children, and our home and I have nothing to show for them, and I have worried over this situation until I have nearly wrecked my own life. You have made this situation so intolerable that I cannot help but adopt your implied suggestion that if I don't like matters to get out. I have told you that I cannot stand for your lack of interest in our home, in me, in your own personal habits, your slovenness, and lack of pride is sickening.

"There is no use in going on enumerating the things that are bones of contention between us, and I think that you can see as well as I can that we cannot go along any longer as I have not the patience or nerve to carry along an existence that is a sham. Under these conditions you can see that we had better part and make the most of what days are ahead of us.

"There is therefore nothing for us to do but to break, and so I cannot tell you when I will ever be home again. I am going to try and make the most of what yet remains of my life. This may seem a hard letter, but I have had many hard days and years, and I cannot go any further. I have not the patience to try to reconstruct matters. I will try and get my clothes sometime, and what few things are mine, and hope that you will understand that this letter is written kindly and not in anger. Please take care of the children and don't learn them to hate me."

He also added the following schedule of his itinerary for the ensuing week:

| "Monday | Wicomico Hotel, Salisbury, Md. | | | |
|---|---|---|---|---|
| Tuesday | " | " | " | " |
| Wednesday | " | " | " | " |
| Thursday | Avon | " | Easton | " |
| Friday | I don't know where." | | | |

Standing alone, his letter is too ambiguous to support the conclusion that the writer intended it to announce a fixed and irrevocable intention on his part to abandon the appellee. There are indeed expressions in it upon which that construction might be placed, but, taken as a whole, it is not inconsistent with the theory that it was intended as an invitation for negotiations for the reformation of conduct of which Roberts complained. But his own testimony and his subsequent conduct remove any possible doubt as to its meaning, and compel the conclusion that he did by it intend to definitely and finally terminate the marital relation between him and his wife. When he left his home on March 4th, his children were ill, and in her letter to him of March 13th his wife wrote him of their condition, and in the letter made this somewhat cryptic statement: "Do you think you can find happiness by crushing the lives of three children? As for me I know whom I have believed and am persuaded that He can guard that which I have committed unto Him."

While that statement had no apparent connection with anything else contained in the letter or disclosed by the evidence, it appears to have been intelligible and highly irritating to Roberts, for he said that not only did it make him "furiously angry," but that he had never intended to leave until he "got that letter." And he later testified: "Q. As I understand it then that this quotation from the scripture is the thing that made you decide you were going to leave, is that it? A. Yes. Q. When you left you had no occasion to leave then—A. I don't know the word to use but I stood an awful lot of hardships in my home life, and that was the straw that broke the camel's back. Q. The scriptural quotation is the thing that made you make up your mind you were not coming back? A. Yes."

These statements, taken in connection with the unquestioned fact that he never did return or offer to return to his home, are sufficient to show that he intended by his letter of March 18th to definitely sever his marital relations with the appellee. And independent testimony as to his continu-

ous and deliberate absence from his home affords sufficient corroboration.

Neither in the pleadings nor in his testimony did Roberts deny that he had in fact separated from his wife, but he attempted to excuse his abandonment on the grounds (1) that she had for a number of years refused him "complete marital intercourse," and since November, 1928, "sexual contact" of any kind whatever, and (2) that she subordinated her domestic duties to an inordinate activity in religious work. Other than the uncorroborated testimony of the husband, there is no evidence to support either of these charges. The second is based upon mere trivialities, and requires no serious consideration. The first rests entirely upon the husband's statements concerning intimate and private marital relations between him and his wife, which she contradicted. He did indeed attempt to support them by certain medical testimony as to physiological phenomena incident to the operation of the sexual function which was utterly meaningless, and by testimony as to contemporaneous statements made by him to third persons out of his wife's presence corroborating his statements on the witness stand, which was properly excluded. Code, art. 35, sec. 3. The justification which he alleged was an affirmative defense, the burden rested upon him to establish it, and, since his statements as to it were not only contradicted by his wife but not corroborated by any other testimony whatever, it failed, and we find no error in so much of the decree as granted a divorce *a mensa et thoro* to the appellee.

2. For the reasons stated in so much of the opinion as deals with the wife's right to the primary relief prayed in her original bill, it necessarily follows that the appellant's crossbill was properly dismissed, and we also concur in that ruling of the chancellor.

3. Assuming that the wife was entitled to permanent alimony, the next question presented by the appeal is whether the court was authorized to allow it in the form which the decree orders. The decree, under the general designation of alimony, directs the appellant to do three several and distinct

things: (1) To pay charges for taxes, public dues, and assessments, ground rent, and mortgage interest which have accrued or may accrue against the home known as No. 3822 Bonner Road, Baltimore City, in which they live and which they own as tenants by the entireties, and also the interest on a joint promissory note executed by him and his wife; (2) to pay to his wife eighteen dollars per week for her support and the support of their infant children; and (3) to surrender to his wife and children the exclusive use of the Bonner Road property.

This court has had occasion in several recent cases to consider and restate the law controlling the allowance of alimony in actions for divorce or permanent alimony, and in each of these cases it affirmed and emphasized the principle that alimony is an allowance of money payable at stated periods by the husband to the wife for her support during their joint lives so long as they live apart (*Spear v. Spear,* 158 Md. 672, 149 A. 468; *Slacum v. Slacum,* 158 Md. 107, 148 A. 226; *Bushman v. Bushman,* 157 Md. 166, 145 A. 488; and *Dickey v. Dickey,* 154 Md. 675, 141 A. 387), and explicitly repudiated the doctrine that alimony may be decreed in gross. *Bushman v. Bushman, supra.*

In *Wallingsford v. Wallingsford,* 6 H. & J. 489, it was held that "alimony is not a portion of the husband's real estate" to be assigned to the wife in fee simple, subject to her control, or to be sold at her pleasure, but a provision for her support, to continue during their joint lives, or so long as they live apart. And in *Bushman v. Bushman, supra,* the court quoted with approval the statement from *Bishop on Marriage and Divorce* that "the court cannot decree to the wife as alimony, a gross sum, or an absolute title in specific property, or a sale of a part of the husband's property for her use." Sections 835, 834, 1054, 1045, 1051. While the form of the several decrees in those cases differs from that from which this appeal was taken, nevertheless the decision in each of them depended upon the principle that no allowance to the wife in actions for divorce or separation will be treated as alimony which does anything more than provide for the

payment of money at stated periods to the wife for her support during the joint lives of the parties so long as they are separated, and that principle applies with equal force to this decree.

And while that principle is not universally accepted, it has been the law of this state for over one hundred and fifty years (Code, art. 16, sec. 14, Acts 1777, ch. 12; *Emerson v. Emerson,* 120 Md. 589, 87 A. 1033), and must control in this case. The question then is whether the provisions of the decree, which direct the husband to pay charges assessed against the property which he and his wife hold by the entireties or constituting a lien thereon, are in conflict with that principle.

A primary obligation of the husband was to provide for the support of his wife, and, while that duty may have made him answerable in an action at law for debts incurred by her for necessaries, such liability could not be made the basis of alimony, for alimony is not a debt (*Bushman v. Bushman, supra, Dickey v. Dickey, supra*), and the court had no power to convert debts into alimony.

*Daiger v. Daiger,* 154 Md. 501, 140 A. 717, and *Westphal v. Westphal,* 132 Md. 334, 103 A. 846, were cited as in conflict with that conclusion. But an examination of those cases shows that they have no such effect. While in *Westphal v. Westphal* the decree awarding alimony *pendente lite* provided that the wife should have the use of a house owned by the husband, no objection to it on that ground was urged in this court. In *Daiger v. Daiger,* while the amount of the allowance for alimony was influenced by the amount of rent required for the use of the house in which the wife lived, the allowance was for a sum of money payable monthly, in which the amount payable for rent was included.

As an award of alimony, so much of the decree in this case as required the husband to pay dues, charges, taxes, etc., on the common property was ineffective, and, as there was no agreement to support it, it was unauthorized and void, and, for the same reason, so much of it as required the husband to

pay the interest on a promissory note executed jointly by him and his wife was also invalid.

The second question is whether the court was authorized to award to the wife and children of the appellant the exclusive possession of the Bonner Road property. Clearly such an award was not an allowance of alimony (*supra*), and could be justified, if at all, only as an exercise of the general equity powers of the chancellor, exerted for the protection of appellant's wife and children, and we have found no such justification in the evidence in the case. It is true that the very nature of the decree contemplates separation of the parties, and it is also apparent that that purpose could be frustrated if circumstances sanctioned by the decree required them to occupy the same domicile. But the wife was not entitled to a specific part of the husband's estate (*Wallingsford v. Wallingsford, supra*); and, for the reasons upon which that conclusion is based, in the absence of peculiar and compelling circumstances, she should not be granted the exclusive possession of any part thereof. In this case the husband was equally entitled with the wife to the property, and the effect of the decree was to completely divest him of the present beneficial use of a part of his estate, and, as there is nothing in the evidence to justify that action, it was unauthorized and erroneous. A decree of divorce *a mensa et thoro* does not dissolve the marriage bond, but merely suspends the right of cohabitation, and has no effect on the property rights of either spouse. *Bishop on Marriage, Divorce and Separation,* sec. 1671 *et seq.* And while the wife was entitled to receive as alimony such an allowance as would suffice to maintain her in reasonable comfort, she was not necessarily entitled to exclude the appellant from the use of property which he owned jointly with her, so as to leave him a mere naked interest in it, which he could neither sell nor use. It was held in *Schnepfe v. Schnepfe,* 108 Md. 145, 69 A. 829; *Mann v. Mann,* 144 Md. 518, 125 A. 74, that, in the absence of proof that he intended to divest himself of his property for the purpose of defrauding his wife, the court would not interfere with the free and unlimited right of the husband to

dispose of his estate at will. But to take property held as this is out of his control and place it in the exclusive possession of his cotenant would affect him even more injuriously than restraining him from selling property which he owned in fee simple, for in the latter case he would at least continue to enjoy the rents, income, and profits therefrom. There may possibly be circumstances under which such a provision could be sustained as necessary for the effective operation of the decree, or the protection of the wife, but we find no such facts in this case.

The decree also allows as alimony a definite sum of money to be paid weekly for the support of the appellee and the "minor children." Although an allowance in that form is frequently made, the better practice is to separate the respective allowances made for the support of the wife and of the minor children, for the allowance for the support of the children is not alimony (*Bushman v. Bushman, supra*), but is based upon different principles than those applicable to the allowance to the wife for her support and maintenance. *Id.* The phrase "three minor children" as used in the decree includes the oldest daughter, Ethel Thieme Roberts, who became eighteen years old on October 27th, 1930, and it is contended that the decree is erroneous for that reason too. That objection assumes that, when Ethel became eighteen years of age, she ceased to be a minor, and that consequently her father is no longer obliged to support and maintain her. But that objection is met by the case of *Greenwood v. Greenwood,* 28 Md. 387, in which it is said: "In our judgment much greater evils would result from a decision severing the obligation of parental duty, and permitting females to leave their homes, freed from all parental authority, at the age of eighteen. The common law has wisely limited the period during which the child is to be under the father's control, and is entitled to look for him for support, and it cannot be changed without some positive act of the Legislature directed to this especial end." Our attention has been called to no statute or later case modifying the effect of that decision,

and, as the reasons upon which it was based are as cogent now as when it was made, we see no reason to disturb it.

While we have for the reasons stated condemned the form in which alimony was decreed in this case, it does not follow that the expenses chargeable against the wife or against property which she and her husband hold as tenants by the entireties are to be disregarded. On the contrary, all such expenses are to be considered, together with such factors as the financial circumstances of the parties, their station in life, expenses which the wife has been compelled to incur as a result of the husband's failure to adequately provide for his family, the age and physical condition of the parties and their children, and the expense of educating the children, and an allowance, based upon those factors and all other facts and circumstances which may legitimately affect them, made separately for the wife and children which will support them in reasonable comfort in their station in life. 1 *R. C. L.* "*Alimony,*" secs. 77, 78.

For the reasons stated, the decree will be affirmed in part and reversed in part, and the case remanded for further proceedings in accordance with the views expressed in this opinion.

> *Decree affirmed in part and reversed in part, and case remanded for further proceedings in accordance with the views expressed in this opinion, with costs to the appellee.*