HARRY C. KALBEN, Executor, *v.* ANNA M. KING.
[No. 21, January Term, 1934.]

*Decided April 12th, 1934.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*James Fluegel* for the appellant.

*Philander B. Briscoe* and *John F. Oyeman,* with whom were *Briscoe & Jones* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

On December 1st, 1923, the appellee, Anna M. King, filed a bill for divorce *a mensa et thoro* against her husband, C. Harry King. The defendant answered, and on January 14th, 1924, an order was passed that he pay his wife seventy-five dollars per month "as alimony *pendente lite* accounting from the first day of December, 1923, and continuing until the ―― day of ――, 19― (should this suit be so long pending), or until the further order of this court." On January 31st, 1924, a petition was filed by the defendant to take testimony, and summons issued for witnesses in March and in April, 1924, but nothing appears to have been done in the case until June 5th, 1931, when the defendant filed a cross-bill, summoned the plaintiff (appellee), by order of publication, and secured a decree *pro confesso,* and proceeded no further.

On June 1st, 1933, the plaintiff (appellee) filed a petition wherein she alleged that "C. Harry King, who is now dead," owed her on account of the alimony *pendente lite* $2,385; that he paid her seventy-five dollars a month for five years and six months; then seventeen payments of forty dollars each, the total amount paid her after the filing of her bill of complaint being $5,715; that the defendant in the divorce suit died December 24th, 1932, leaving an estate amounting to $9,111.53, according to a statement made at the argument,

made up largely of the proceeds of a life insurance policy; and that Harry C. Kalben was granted letters testamentary on the estate. The petition prayed (1) that Harry C. Kalben, executor, be made a party defendant to the suit, and (2) that the court pass a monetary decree against the appellant, executor, in favor of the petitioner for $2,385; (3) for general relief.

The executor filed a "demurrer and motion to quash the subpoena," assigning, amongst other reasons, laches, that the claim on account of its age could not be regarded as alimony *pendente lite,* on the theory that it is only allowable for such time as may be reasonably necessary to prosecute a suit for divorce, and that under the law of this state an executor cannot be made a party defendant to a divorce suit after the defendant's death, for the purpose of obtaining a monetary decree against his estate. On June 19th, 1933, the chancellor passed an order sustaining the demurrer, and quashing the writ of subpoena.

The plaintiff then, on July 8th, 1933, without asking leave to amend her petition of June 1st, filed another petition, which was a repetition of the first, except that it did not ask to have the executor made a party, in which she prayed that the circuit court "determine, decree and adjudge the amount due as of the 24th day of December, 1924," and for general relief, but did not pray, as in the first petition, that the court "pass a monetary decree" for the amount claimed by the plaintiff. To this second petition the appellant filed a motion *ne recipiatur,* which was overruled. Thereupon the appellee demurred to the second petition, the grounds of demurrer, in addition to the reasons assigned in the demurrer to the first petition, being that the question submitted for decision was *res judicata,* and this demurrer was overruled by a decree from which this appeal is taken.

The only evidence taken was that of the plaintiff. The appellant's contentions are: (1) That the matter set up in the plaintiff's second petition, filed July 8th, 1933, was determined by the order of June 19th, 1933, on the petition

of June 1st, 1933; (2) that on the death of the defendant the suit for divorce abated, and no further proceedings of any kind can be had in that case; (3) that on the plaintiff's testimony she had abandoned her suit for divorce, and that any money she thereafter received from her husband was not alimony.

The plaintiff's contentions are: (1) That the executor is not a party to the proceeding, and as *amicus curiae* should not be heard; though "section 85, art. 5 of the Code appears to approve of the action of the executor, but the decisions seem to be united in denying the same right to an *amicus curiae*"; (2) that, if the executor was not a party to the first petition (the effect of the quashing of the writ), then there was no adjudication of the matter involved, either for or against him; and (3) that the equity court had jurisdiction to hear and determine the question of arrears of alimony *pendente lite* at the time of the defendant"s death.

At the outset, it cannot be denied that the subject-matter of the two petitions and the relief prayed were the same, even though one prayer for relief was for a personal decree against the executor, and, if there was an adjudication of the facts alleged in the petition of June 1st, then this case would be at an end, as no motion was made to amend, and no appeal taken. The order on the demurrer in the first of its two sentences sustained it generally, and, if it had stopped there, without any further proceedings on the petition, there would have been an end of it. But in the second sentence the order reads: "And the writ of subpoena against Harry C. Kalben, Executor, be and the same is hereby quashed." When the chancellor ordered the writ by which the executor was brought before him to be quashed, it left the petitioner without a respondent, and left no one against whom to decree, and therefore nothing to decide. There was no reason, therefore, why the plaintiff could not file another petition, and the motion *ne recipiatur* to the second petition was properly refused. *Bolton v. Stokes,* 82 Md. 50, 61, 33 A. 491; *Johnson v. Stockham,* 89 Md. 368, 376, 43 A. 943.

The plaintiff then, on July 8th, 1933, filed an *ex parte* petition by which she omitted the prayer contained in the first petition to make the executor a party, and prayed the court "to determine, decree and adjudge the amount due (her) as of the 24th day of December, 1932." Without service or notice appearing in the record, the appellant, as executor of C. Harry King, deceased, came in with a motion *ne recipiatur,* which was also in the nature of a plea of *res judicata,* which we have already discussed, and, on its being overruled, as executor, and as *amicus curiae,* filed a demurrer to the second petition, assigning as reasons therefor the former adjudication and the failure of the plaintiff to obtain a final decree against her husband in his lifetime. The appellee says in her brief that this is not a proceeding in which one can appear as *amicus curiae,* but we need not incumber this opinion with a discussion of the status of a friend of the court, for, if the appellant should appear at all, it ought to be as executor of the husband, resisting the attack on the estate of the decedent.

The appellant rests his contention, that the equity courts are without jurisdiction to take any proceedings in a divorce case after the death of either party, on the case of *McCurley v. McCurley,* 60 Md. 185, and, unless that case can be distinguished from this, the contention would be right, and, if right, a wife who has become widowed would have no place to go to recover arrears of alimony *pendente lite,* if there has been no decree upon which execution or attachment could have been issued in the lifetime of the husband. In the *McCurley* case, *supra,* which was on a bill for divorce *a mensa et thoro,* brought by the wife, the defendant husband died before a decree was passed. Her counsel had been allowed a hundred dollars "as a retaining fee in her said case." He suggested the death of the husband, and prayed that subpoena might issue against his executor, that "the rights which survive in this suit may be determined." The executor demurred, his demurrer was overruled, and process issued. The wife then filed her second petition for additional counsel

fees, and, after hearing, the allowance was made. The executor appealed, and the decree for the claim was reversed.

There does not seem to have been another case in this court, in which a claim for alimony against a deceased husband was involved, until the case of *Blades v. Szatai,* 151 Md. 644, 135 A. 841, 845, in which a petition had been filed by the husband's executor, wherein he alleged that the wife, who had been allowed a weekly sum for the support of a minor son of whom she had been awarded the custody, had preferred a claim against the husband's estate—not only for the sum in arrears, but at the same rate covering the son's minority, and the purpose of the petition was to ascertain and have determined what the liability of the executor was. It was there held that "the estate of Andrew Szatai is only liable for such sum as represents payments at the rate of three dollars per week from September 19, 1923, the date of the last payment, to June 25, 1924, the date of his death." That proceeding was taken in the original divorce case by the executor. No question appears to have been raised, in *Blades v. Szatai,* of the propriety of an adjudication of the charge against the husband's estate, with his executor as party, and it makes no difference whether he be petitioner or respondent; it is a recognition of the practice, and until overruled is a precedent. *Darner v. Darner,* 157 Md. 97, 145 A. 179.

The weight of authority in this country is that a wife may recover accrued alimony against a deceased husband's estate to the date of his death, and it is generally done by bringing in his executor as a party to the proceedings for the sole purpose of enforcing the demand. 1 *R. C. L.* 953; 2 *L. R. A.* (N. S.) 242, note; *Martin v. Thison,* 153 Mich. 516, 116 N. W. 1013; *McIlroy v. McIlroy,* 208 Mass. 458, 94 N. E. 696; *Gilbert v. Hayward,* 37 R. I. 303, 92 A. 625; *Van Ness v. Ransom,* 215 N. Y. 557, 109 N. E. 593; *Francis v. Francis,* 31 Grat. (Va.) 283; the last case being for arrears of alimony *pendente lite;* all others cited being on decrees for permanent alimony. In some jurisdictions such a claim may

be enforced by *scire facias.* *Knapp v. Knapp,* 134 Mass. 353; *Coffman v. Finney,* 65 Ohio St. 61, 61 N. E. 155.

The opinion in the *McCurley* case was intended to lay down a rule applicable only to pending suits, not those in which there has been a decree of divorce, when it said: "It is well settled that the death of either party to a divorce suit before decree, it being a personal action, abates the divorce proceedings; and this effect must extend to whatever is identified with those proceedings. The allowance of money to pay the wife's counsel fees is in furtherance of the procedure to obtain or prevent the divorce. When, therefore, the jurisdiction to pass a decree is ended, no jurisdiction can survive as to matters purely ancillary to that object," subject, however, to the provision of sections 81-85 of article 5 of the Code. Suit money and alimony *pendente lite* are usually allowed indigent wives as a matter of course, the first to provide the expense of the prosecution or defense of the case, the other to provide for her needs during the pendency of the suit, both because she is still a wife incurring expenses for which the husband, as such, is chargeable. When the case of *Blades v. Szatai,* 151 Md. 644, 135 A. 841, came here, there had been a final decree; there was nothing further to be done in the case, and the claim was by virtue of a final decree.

In the *McCurley* opinion, as already quoted, it is said that "the death of either party to a divorce suit before decree, it being a personal action, abates the divorce proceedings; and this effect must extend to whatever is identified with those proceedings." The construction, however, which we put upon the language of that opinion, does not agree with the appellant's view of the meaning of the opinion, or of what the case decided. The petition in the *McCurley* case was for the payment of a counsel fee to be awarded after the death of the husband. It was to do something after the case abated, which was from its nature "in furtherance of the procedure to obtain * * * the divorce." If the petition had been to enforce the payment of a counsel fee already allowed, it would have presented a different situation, as there would

then have been a claim definitely determined and ascertained in the lifetime of the testator, for which he was responsible, and which therefore could have been filed against his estate because of his liability for it in his lifetime. And the same rule would apply to temporary alimony. It is a liability while the suit is pending, and can only be determined by a final decree or order of the court, or by the death of either of the parties. If there are any installments of alimony unpaid in his lifetime, payment may be enforced by contempt, or by execution (Code, art. 9, sec. 29, art. 16, sec. 205), in the manner pointed out in *Marshall v. Marshall,* 164 Md. 107, 163 A. 874. To say that no action of any kind can be had in the divorce case after the death of the husband means that obligations which he has incurred by reason of orders passed against him for alimony, if unpaid, are cancelled, because there is no other court than the court of chancery which has jurisdiction of divorce and whatever is "in furtherance" of it.

The meaning and effect of the decision in the *McCurley* case is that, after the husband's death, no costs, expenses, or maintenance in addition to those ordered and incurred in his lifetime, can be imposed on his estate.

It is our opinion, therefore, that, after the husband's death, an inquiry may be had in a divorce case, in which he has been ordered in his lifetime to pay alimony and counsel fees, for the purpose of ascertaining what amounts, if any, of such items are unpaid, in order to determine what may be claimed against his estate.

In this case we are not inclined to look with favor on the claim here made for alimony *pendente lite.* It never was contemplated that temporary alimony should run for eight years. Its purpose is to provide support and suit money for the wife for such time as may be reasonably necessary to carry on to a decree a suit for divorce. In a pending suit a reasonable limitation would be the rule of the ecclesiastical court, which limited the period for the recovery of arrears of alimony to one year. This rule, however, could only be ap-

plied to pending suits, as a final decree carries with it the right to recover arrears for twelve years. *Marshall v. Marshall,* 164 Md. 107, 163 A. 874. If the husband is plaintiff, and the defendant wife secures an order for alimony *pendente lite,* he could not be heard to complain if arrears of alimony accumulated over a period of years on account of his failure to seasonably prosecute his suit. In this case the wife brought the suit. It has been held that, if undue delay in bringing a case on for hearing is the fault of the wife, she is not entitled to alimony *pendente lite.* *Ward v. Ward,* 1 Tenn. Ch. 262; *Fowler v. Fowler,* 4 Abb. Prac. (N. Y.) 411.

The plaintiff went to California in April, 1930, and there remained until October 29th, 1932, the day before she testified in the case, and, when she said she "went away with no intention of pushing the case any further," she had by her own confession abandoned it, and with it every pretense of the claim she here asserts. 1 *R. C. L.* 875.

Since the argument on this appeal, the appellee's counsel have suggested her death, and prayed that her administrator, John F. Oyeman, be made a party to the suit, which has been done. Code, art. 5, sec. 83.

Because we do not regard this as a claim for alimony *pendente lite,* on account of the failure of the plaintiff to more seasonably prosecute her case, and for the further reason that the plaintiff had in our opinion abandoned her suit for divorce, the decree should be reversed.

*Decree reversed, with costs.*