NETTIE G. FAIRBANK *v.* W. ROLAND FAIRBANK
[No. 9, October Term, 1935.]

*Decided November 1st, 1935.*

The cause was argued before BOND, C. J., URNER, PARKE, SLOANE, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Arthur R. Padgett,* for the appellant.

*Louis S. Ashman,* for the appellee.

MITCHELL, J., delivered the opinion of the Court.

The appeal in this case is from an order of the Circuit Court of Baltimore City, modifying a former decree of that court, which awarded the appellant the sum of seven dollars per week as permanent alimony.

The order appealed from reduces the amount of permanent alimony from the original award to the sum of four dollars per month, and further provides that all alimony arrearages as of the date of the modifying decree be "held in abeyance," with the usual reservation that the changes effected by the modifying order be, and remain, subject to the further order of the court.

The parties to this suit were married on August 31st, 1921, and resided together until the 6th day of March, 1929. In July, 1929, the appellant filed a bill for divorce *a mensa et thoro,* which was later amended to a bill for alimony only, and it was upon the latter amended bill

that the lower court, on October 18th, 1929, decreed the original weekly allowance. On November 19th, 1931, the appellee filed his petition to be relieved from the further payment of alimony, which petition was heard and dismissed, without prejudice, by the chancellor, on December 23rd, 1931. Again, on January 12th, 1932, the appellee filed a similar petition, which, upon a hearing, was dismissed, without prejudice, on May 23rd, 1932.

Finally, on February 7th, 1935, the appellee filed his third petition to be discharged from the then existing order for the payment of alimony, and the decree of the court upon this latter petition, as heretofore indicated, forms the basis of this appeal.

In the third petition, the appellee for the first time, as one of the reasons for his inability to comply with the terms of the original decree against him, alleges that he is suffering from a "cardiac arrythmia (heart disease) ; is unable to engage in sustained work and requires and is receiving medical treatment."

He further alleges: "That the Petitioner always was employed by his father, a dairy farmer; that for a long time the farm has been operated at a heavy loss, thereby forcing his father to borrow monies on his life insurance policy and otherwise, and to discontinue the payment of any regular salary to the Petitioner."

The record establishes the fact that the appellee is now about thirty-four years of age; his wife, the appellant, being six years his senior. It is further shown that there are no children involved in the controversy, and that neither spouse is possessed of property.

At the time of the passage of the original decree, the appellant was employed as an assistant in a dental office at a salary of fifteen dollars per week. She is still employed in the same capacity, but instead of receiving the above weekly payment in cash, she now resides with the family of her employer and receives as compensation her board, lodging, and laundry, and the sum of two dollars in cash per week. The record also shows that, at the time of the passage of the original decree, the appellee

was in the same employment in which he is now engaged, and his answer to the original bill admits that he was then receiving a weekly salary of twenty-five dollars. As heretofore shown, he continues in the employ of his father without receiving any regular salary.

In substantiation of the allegation of the present condition of his health, the appellee produced a doctor of twenty-two years' experience, who testified that he first treated the appellee in May, 1932, for a stomach condition and generally run-down state; that he has since treated his patient at intervals; and that in January, 1935, the appellee developed the heart condition above mentioned, which "may or may not be permanent." Upon cross-examination the doctor further testified as follows: "Q. Would this heart condition prevent him from doing light work such as making collections and keeping books, and things of that sort? A. If he did not do any laborious work a heart condition like that—that is, his condition would not, but during the periods when he has those spells it would prevent him from doing anything, in my judgment. The condition that he was in during the month of January, he was really in my judgment not fit to do anything, though I think he did do part time. Q. A condition like that does not cover any long period of time, does it? A. It sometimes covers a life time. Q. I mean where he cannot work at all? A. No, he is not in a condition where he cannot work at all but he is in a condition where he cannot do hard continuous steady work."

The appellee on his own behalf testifies that his father is the owner of a farm of one hundred acres, a herd of fifty cows, and operates a dairy. He formerly served milk routes, collected from customers, and did general farmwork. For the past fourteen months, however, his activities have been clerical rather than laborious, in that he is now engaged in attending to collections due his father, assisting in keeping the books of the business, and at times signing checks and attending to the general management of the same. However, for this service, as we have observed, he receives no monetary consideration, al-

though it is shown that the father employs six other men in the conduct of his farm and dairy business, who, as far as the record goes, may be presumed to be paid living wages. At least, such is a reasonable presumption, as otherwise the six extra employees would not continue in their present employment.

We have reviewed the facts revealed by the record in perhaps greater detail than necessary, because of the peculiar situation they present. It is shown that the appellant, beyond her own personal efforts, is without means of support, and that her annual income, exclusive of the equivalent of her board, lodging, and laundry bill, is the sum of $104. And it will be conceded that such a sum is inadequate to meet her ordinary and necessary expenses for clothing and provide for her medical attention when, if, and as required. On the other hand, the appellee, though suffering from a partial physical disability, is employed in the same business in which he was engaged at the time of the passage of the original decree, and according to his own testimony is rendering important clerical and executive service in the conduct of his father's business, without compensation, at the present time, other than his own individual support.

The sole questions now before us, therefore, are:

(a) The propriety of the chancellor in modifying the original decree, in so far as the same affects pending alimony in the premises; and

(b) In holding in abeyance all alimony arrearages existing as of the date of the passage of the modifying decree.

Ordinarily, alimony is allowed as an incident to proceedings for a legal separation or divorce, but in this state the power of the courts to award it as being inherent in equity jurisdiction has been recognized and exercised since the case of *Galwith v. Galwith*, 4 H. & McH. 477, decided in 1689, although it was not until the year 1841 that the authority to decree divorces was lodged in said courts. *Jamison v. Jamison*, 4 Md. Ch. 289; *Stewart v. Stewart*, 105 Md. 297, 66 A. 16; *Taylor v. Taylor*, 108

Md. 129, 69 A. 632; *Outlaw v. Outlaw*, 118 Md. 498, 84 A. 383; and 2 *Am. & Eng. Encyc. of Law* (2nd Ed.) 92.

Under any circumstance "alimony" is an allowance to the wife in recognition of the husband's common law liability to support her, Or, as tersely stated by Judge Offutt in the case of *Roberts v. Roberts*, 160 Md. 513, 521, 154 A. 95, 98: "This court has had occasion in several recent cases to consider and restate the law controlling the allowance of alimony in actions for divorce or permanent alimony, and in each of these cases it affirmed and emphasized the principle that alimony is an allowance of money payable at stated periods by the husband to the wife for her support during their joint lives so long as they live apart. *Spear v. Spear*, 158 Md. 672, 149 A. 468; *Slacum v. Slacum*, 158 Md. 107, 148 A. 226; *Bushman v. Bushman*, 157 Md. 166, 145 A. 488; and *Dickey v. Dickey*, 154 Md. 675, 141 A. 387, 58 A. L. R. 634."

It might be added that there is no fixed rule for gauging the measure of permanent alimony. In general, it may be said that its allowance and the amount thereof are matters resting in the sound judicial discretion of the chancellor, to be exercised with reference to established principles and upon a view of all the circumstances of each particular case. In reaching a conclusion the estate of the husband, his capacity to work and earn, and the condition and means of the wife, are important elements for consideration. And, ordinarily, the exercise of that discretion by the trial judge will not be disturbed, unless it clearly and certainly appears that an error of judgment is shown. 2 *Am. & Eng. Encyc. of Law* (2nd Ed.) 120; *Schouler, Marriage & Divorce* (6th Ed.) vol. 2, 1982; *R. C. L.* vol. 1, p. 929; *Ricketts v. Ricketts*, 4 Gill, 105; *Chappell v. Chappell*, 86 Md. 532, 39 A. 934; *McCaddin v. McCaddin*, 116 Md. 567, 82 A. 554, 556.

It will be noted that this is not the first, but it is the third, effort of the appellee to be released of the duty imposed upon him by the original decree.

In both of his former petitions he recites that he is receiving a compensation of forty dollars per month and board; whereas, in his third and final petition—the one now under consideration—he alleges that, because of the financial condition of the dairy business of his father, by whom he has continued to be employed since the date of his marriage, he is no longer paid any monetary compensation.

There is nothing in the record to establish the fact that the appellee is practically a gratuitous employee, except his own uncorroborated statement. But be that as it may, there is no compulsion on his part to work without reasonable compensation, for his father or any other employer.

Notwithstanding his physical disability, he testifies that he is working, and the character of the service he is rendering warrants the inference that he is worthy of his wage. If his father, who is able to employ six other men, as we have previously observed, is not willing to justly compensate him, it becomes his duty to seek such other work as he is capable of performing, so long as he is under the legal obligation to lend support to his wife, with whom he is not living.

In a word, under such allegation as is set forth in the instant case, it is obvious that a designing husband could, if he so elected, render real and valuable service to his parent, release the latter from payment for the same, and thereby defeat the very purpose for which the principle of alimony is invoked. Especially is this true in a case wherein the husband is not vested with property to which the wife, through appropriate proceedings, may resort for remedy.

In *Ricketts v. Ricketts, supra,* it is said: "The amount of alimony to be allotted to a wife, who has proved herself entitled to a separate maintenance, must depend on the circumstances of each case. The law has laid down no exact proportion. It sometimes gives a third, sometimes a moiety. The object to which the attention of the court is directed, and at which it aims, is to secure to a

wife, by a suitable provision, a certain and comfortable maintenance. This must be accomplished, no matter to what privations or inconveniences it may subject the guilty husband."

We are not unmindful that, in the latter case, the chancellor was dealing with income as distinguished from earnings; but we see no logical reason why the same principal should not be applied with due regard to the earning capacity of the husband.

Cases, such as the instant case, are not without their difficulties in an appellate court, because no fixed amount of alimony can be imposed by this court, through a reversal and remand to the lower court, which would not be subject to the ever-changing conditions of the parties to the suit.

And as was well said by this court, speaking through the late Chief Justice Boyd, in *McCaddin v. McCaddin, supra*: "It is the duty of the court, in determining the amount of alimony to be allowed, to inquire into the circumstances of the parties, not only the financial condition of the husband, but his ability to earn money; and, although this court has the power to review the amount fixed by the lower court (*Chappell v. Chappell*, 86 Md. 532, 39 A. 984), it should not disturb the large discretion vested in the chancellor, unless it is thoroughly satisfied that there has been error in respect to the amount named."

Notwithstanding, however, our approach to a conclusion in this case is guarded by considerations herein indicated, we are of the opinion that there was error in the judgment of the chancellor to the extent of the modification of alimony effected by the decree from which this appeal was taken; it being our conclusion that the sum of ten dollars per month should be decreed the appellant, subject, of course, to the further order of the lower court.

It remains for us to dispose of the second question raised in the appeal, to which reference has hereinbefore been made.

The appellee in his petition prayed that he be relieved from the existing order of alimony; and the chancellor, in the decree which forms the basis of this appeal, drew a line of demarcation between alimony then accrued and due the appellant, and the alimony which would become due her under the modified decree. The former he did not reduce, nor does the amount of the arrearage appear in the record.

In *Dickey v. Dickey*, 154 Md. 675, 681, 141 A. 387, 390, after a careful review of the remedies available to a wife for the enforcement of an alimony decree, this court, speaking through Judge Parke, said: "However, the obligation to pay alimony in a divorce proceeding is not regarded as a debt but a duty growing out of the marital relation and resting upon a sound public policy, and so this obligation may be enforced by attachment of the person for contempt, and the defendant be imprisoned, unless he can purge himself of the contempt by paying or by showing that he has neither the estate nor the ability to pay. *Miller's Equity*, sec. 244, pp. 303, 304, note 4; *McCurley v. McCurley*, 60 Md. 185, 189; *Mann v. Mann*, 144 Md. 518, 524, 125 A. 74; 2 *Bishop on Marriage and Divorce*, secs. 1092, 837; *Feigley v. Feigley*, 7 Md. 537, 563; *Schouler on Marriage and Divorce* (6th Ed.) secs. 1843, 1850, 1853, 1851, p. 2005."

In the instant case, however, the decree is not upon a petition of the appellant, citing the appellee for contempt for nonpayment of alimony due her, but is a modifying decree, upon the petition of the appellee to be relieved, generally, from the payment of alimony.

There has, therefore, been no affirmative decree of the chancellor, denying the appellant the right to collect alimony due her as of the date of the modifying decree, based upon any application of her own to collect the same. If, as is apparent from the record, the husband is without property, her only remedy lies in an application to have the appellee cited for contempt. Meanwhile, the chancellor's order holding action on the alimony

arrearages in abeyance does not preclude her from filing such a petition.

In the last analysis, it does nothing more nor less than indicate the chancellor's state of mind with reference to the arrearages, at the time he passed the modifying decree; but there is no such finality as to this action of the court as would preclude the appellant from proceeding further before it. If she does proceed, the court will still have the inherent right to either imprison the appellee, or then hold the matter in abeyance upon such terms and conditions as it may deem proper in the premises.

From these conclusions, it follows that the modifying decree, from which this appeal was taken, in so far as the same curtails the amount of original alimony, must be reversed, and the cause remanded.

> *Decree reversed, with costs to the appellant, and cause remanded for further proceedings in conformity with the views expressed in this opinion.*