BERNARD A. WINKEL *v.* MARIAN I. WINKEL
MARIAN I. WINKEL *v.* BERNARD A. WINKEL

[Nos. 8-13, April Term, 1940.]

490

*Decided October 31st, 1940.*

The causes were re-argued before BOND, C. J., PARKE, SLOAN, MITCHELL, and JOHNSON, JJ.

*Leo Weinberg,* for Bernard A. Winkel.

*Charles S. Hayden* and *Elmer Carleton Smith,* for Marian I. Winkel.

PARKE, J., delivered the opinion of the Court.

The bill of complaint was filed on March 10th, 1925, by the wife, Marian I. Winkel, against the husband, Bernard A. Winkel. Its object was to obtain separate maintenance or alimony for the wife, to require the defendant to deliver certain real and personal property which she claimed as hers, and for an injunction restraining the

defendant from selling and disposing of certain personal property. The bill was not for a divorce but for alimony. It did not contemplate the dissolution of the marital tie. Nor have the spouses ever been granted either a divorce *a mensa et thoro* or a divorce *a vinculo matrimonii.*

After disposing of the questions in dispute concerning the real and personal property, the court decreed "that the defendant pay to his wife pending further order of the court the sum of twelve dollars a week" for her support and maintenance, beginning from the time she should fully comply with the requirement that she convey by deed to her husband all her title and interest in certain real estate. The decree is dated May 23rd, 1925, but the wife failed to convey, and the court appointed a trustee to grant the land to the husband, which was done on September 11th, 1931. The alimony consequently began to accrue from September 11th, 1931. The questions on these appeals begin with that date. *Winkel v. Winkel,* 176 Md. 167, 169, 170, 4 A. 2nd 128.

The husband has never paid the wife any of the alimony awarded. Her testimony is that her subsistence before September 11th, 1933, was mainly derived from the payment to her by her husband of a weekly rental of twenty-five dollars for a filling station operated by him on a property in Frederick which she owned and whereon she had her home. This source of income having stopped, the wife, on September 11th, 1933, filed a petition that the original decree awarding alimony be modified by an increase. The husband filed a motion for the dismissal of the petition on the ground of the wife's contempt in not executing the grant to him of the property mentioned in the decree of 1925. There then ensued a protracted course of indecisive pleading and litigation, which culminated in the petition of the wife, which was filed on October 5th, 1937, and amended on March 10th, 1938. In this petition she requested that the alimony be increased to fifteen dollars a week or to such sum as she might be found entitled to, and that she

be awarded what she should receive by reason of the husband's default. The husband filed a combined answer and demurrer. There was a denial of the material facts and of the wife's right to have revised the decree of May, 1925, and to have re-opened the amount of alimony to be paid. The chancellor overruled the demurrer of the husband and, on his appeal, the chancellor's ruling was affirmed on February 2nd, 1939, in *Winkel v. Winkel, supra.* The cause was remanded for further proceedings, which were had. At the time of the remand, the petition of the wife for an increase in the amount of alimony, which was filed on October 5th, 1937, was pending and awaiting determination. On April 13th, 1939, the wife filed three additional petitions. One was for an order to require the husband to pay the solicitors for the wife a counsel fee for their services in connection with the appeal of *Winkel v. Winkel, supra;* and the costs of the appeal in the equity court until the appeal was taken. The second was for an order adjudging that the sum of $7488 was due the wife from the husband for unpaid instalments of alimony, and the third was to compel the husband to pay counsel fees and costs to the solicitors of the wife incurred in connection with the proceedings mentioned. These petitions were heard together. After consideration of the testimony and the argument of counsel, the court decreed, by four separate orders:

First: On the petition of October 5th, 1937, for an increase in the amount of alimony awarded by the decree of May 23rd, 1925, the court reduced the alimony from twelve dollars a week to four dollars a week, accounting from October 5th, 1937, the date of the filing of the petition.

Second: On the petition in reference to the unpaid instalments of alimony the wife was decreed the sum of $3785.14; which was computed, at the rate of twelve dollars a week, for the period from September 11th, 1931, the date of the conveyance of the trustee, to October 5th, 1937, the date of the petition praying for a modification of the decree of May 23rd, 1925.

Third: On the petition for counsel fees for the solicitors of the wife in the appeal in *Winkel v. Winkel,* 176 Md. 167, 4 A. 2nd 128, the court allowed a fee of $250, and the costs subsequent to October 5th, 1937, which are to be paid by the husband.

Fourth: On the petition for further counsel fees on account of services rendered since the mandate of the appellate court, a fee of fifty dollars and the costs were directed to be paid by the defendant.

After these orders were entered, the husband appealed in one order from every one of the four decrees. The wife took separate appeals from the first three orders. She then filed a petition to have the husband pay the costs of the stenographer's transcript of the record, of the printing of the record and of her brief, and of a reasonable fee for the services of her solicitors on appeal. The court passed an order fixing the fee at $150, and requiring it and the reasonable cost of the transcript of the record and its printing, and that of her counsels' brief, to be paid by the defendant, subject to the approval by the court of the amounts of these costs. Both parties entered separate appeals from this last order.

Accordingly, there are six appeals entered on this record. In Nos. 8, 9, 10 there are cross appeals. In No. 11 the husband appeals, and Nos. 12 and 13 are cross appeals.

As a result of the recent decision of this court on the former appeal in this cause, the questions on these appeals are narrowed to a review of the orders made, after the remand, in reference (1) to the allowance of alimony for the period between September 11th, 1931, and October 5th, 1937, at the weekly rate of twelve dollars; (2) to the allowance, after the last named date, of alimony at the reduced rate of four dollars a week; and (3) to the several allowances of fees to the wife's solicitors. It will be convenient to consider first the question on the awards of alimony.

First: In it orders the chancery court selected the date of the filing of the petition of the wife for an in-

crease in alimony, instead of the date of its decree, as the time for the reduction in the original award of alimony to begin. In this choice the court is within its authority. The original decree of May 23rd, 1925, for alimony or maintenance was in full effect at the institution of the proceedings which give rise to the pending appeal. The amount of twelve dollars a week for her support and maintenance was awarded "pending further order of the court," which was a reservation of the right and power of the court to change or stop the allowance whenever the known circumstances of the parties would give occasion for such equitable redress. *Wygodsky v. Wygodsky*, 134 Md. 344, 348, 106 A. 698; *infra; Beck v. Beck*, 43 N. J. Eq. 668, 14 A. 812. With such a right expressly retained, there can be no question of the power of the court to make either a reduction or an increase in the alimony or maintenance as the conditions or circumstances may require.

Moreover, the time when such modification may become effective was in the discretion of the chancellor. Commonly, the decree for alimony or maintenance is effective from the time of its passage, but the court may fix the time at which the alimony is to begin at either before, with, or after the date of the decree. The adaptability, according to the circumstances, of the time when payment of the periodical amount of a continuing alimony or maintenance is to begin is a particularly serviceable procedural discretion in the event of an increase or decrease in the instalment to be paid. If the faculties of the husband are improved, the allowance to the wife ought to be increased, and if they decline, the wife's allowance should be reduced. *DeBlaquiere v. DeBlaquiere*, 3 Hag. Ecc. 322, 329, 162 Eng. Repr. 1173, 1175; *Robinson v. Robinson*, 2 Lee Ecc. 593, 161 Eng. Repr. 451; *Kerr v. Kerr*, (1897) 2 Q. B. Div. 439, 443; *Cox v. Cox*, 3 Add. Ecc. 276, 162 Eng. Repr. 480; *Bishop on Marriage and Divorce*, vol. 2, secs. 869-877; *Tangye v. Tangye*, L. R. (1914) Probate 201, 208; 10 *Halsbury's Laws of England*, 2nd Ed., sec. 1267, p. 797.

In the instant case, the wife applied on October 5th, 1937, for an increase in the amount of alimony or maintenance. The decree, which denied any increase, but reduced the weekly payment to four dollars, was not passed until September 2nd, 1939. It made the reduction effective as of October 5th, 1937, subject to the further order of the court. The wife had no fixed right in the alimony decreed on May 23rd, 1925, and the payment of the specific amount awarded was limited to the period of the pendency of the award of that date, which was constantly subject to modification.

So, the continuation of the payments pursuant to the original decree became immediately subject, on the filing of the petition of October 5th, 1937, to the ultimate determination of the court on the issue thus presented. The modification asked was referable to the date of the filing of this petition, and, therefore, any change effective as of that, or a later, date cannot be said to be retrospective. From the time of the filing of the petition for modification the amount payable thereafter was conditional on the decision to be made on the issue made by that petition. Hence, in the reduction of the periodical payment from this date, the court interfered with no right of the wife, but acted within its judicial discretion in limiting the pendency of the former provision for alimony or maintenance to October 5th, 1937. *DeBlaquiere v. DeBlaquiere*, 3 Hag. Ecc. 322, 331, 332, 162 Eng. Repr. 1173, 1176.

Having found that the effective date for the modification of a decree for alimony need not necessarily coincide with the date of the decree or order to that effect, the remaining questions for consideration relate to what modifications of a decree may be made with respect to periodical payments of alimony which are past due and those which are to become due. In giving the answers to this twofold inquiry, it is necessary to keep in mind the essential requisites and nature of alimony.

Alimony, whether temporary or permanent, is not a debt. *Roberts v. Roberts,* 160 Md. 513, 522, 154 A. 95;

*Bishop on Marriage and Divorce,* vol. 2, sec. 837. Generally speaking it is a periodical allowance during the joint lives of the spouses for the wife's support and maintenance when they live separate and apart or she is divorced from her husband. *Dickey v. Dickey,* 154 Md. 675, 678, 141 A. 387. If the wife is without adequate means for her support and maintenance, alimony *pendente lite* is usually allowed her as a privileged suitor in a divorce suit without the necessity of a preliminary inquiry and determination of the relative merits of the controversy. *Bishop on Marriage and Divorce,* vol. 2, secs. 862, 935; 17 *Am. Juris,* secs. 531, p. 432; 540, p. 435; *Bishop on Marriage and Divorce,* vol. 2, sec. 862; *Hood v. Hood,* 138 Md. 355, 113 A. 895; *Miller v. Miller,* 153 Md. 213, 138 A. 22; *Daiger v. Daiger,* 154 Md. 501, 140 A. 717; *McClees v. McClees,* 160 Md. 115, 152 A. 901; *Cook v. Cook,* 166 Md. 704, 171 A. 722; *Kalben v. King,* 166 Md. 632, 172 A. 80; *Spellman v. Spellman,* 169 Md. 760, 182 A. 342. See *Coles v. Coles,* 2 Md. Ch. 341; *Tayman v. Tayman,* 2 Md. Ch. 393; *Roth v. Roth,* 143 Md. 142, 122 A. 34; *Kalben v. King,* 166 Md. 632, 172 A. 80. But, as a general rule, the wife is not allowed permanent alimony unless she is entitled to a decree for divorce. *Bishop on Marriage and Divorce,* vol. 2, secs. 863-867; *Buckner v. Buckner,* 118 Md. 101, 84 A. 156.

In the matter of alimony, the chancellor, however, must act in the present in reference to a variable ability to support. Thus, if the husband have neither tangible property, nor income nor earning capacity, there is no basis for an allowance of alimony, and none may be made. *Feigley v. Feigley,* 7 Md. 537, 61 Am. Dec. 375. Nevertheless, if the husband should later acquire faculties for the payment of alimony, the chancellor may then proceed to its allowance. 17 *Am. Juris,* sec. 633, p. 484. Again, if there be faculties and alimony be awarded, and the faculties should later increase or decline or utterly fail, the amount of the alimony may be varied accordingly or rescinded. 17 *Am. Juris.,* secs. 643, 644

pp. 491, 492; *Marshall v. Marshall,* 162 Md. 116, 159 A. 260; *Dickey v. Dickey,* 154 Md. 675, 141 A. 387; *Gloth v. Gloth,* 154 Va. 511, 153 S. E. 879; *Tangye v. Tangye,* L. R. (1914) Probate 201, 208. The doctrine is founded in an equality of right and obligation, and its enforcement is indifferent to whether the change is in the relief of one spouse, so long as the rights of the other are not denied. It is patent that of its nature alimony is in amount subject to variations from time to time as the circumstances, needs, and pecuniary condition of the parties change.

As pointed out by Bishop in his work, this doctrine of relative adjustment to contemporaneous faculties rests upon the mutual rights and obligations of the parties, which they assumed for the duration of their joint lives, as well with reference to their children as to themselves. A responsibility of the husband is the support and maintenance of his wife and children in the measure of his ability and station in life. The duties and rights in these respects are subject to changes which are not foreseeable, and so cannot be adequately anticipated and taken care of by any judicial decree. So if, by his fault, the marriage ties are breached and the parties are thereby separated, the husband's conduct does not lessen his obligation to provide for the support and maintenance of his wife, to which she was entitled while in cohabitation. The obligation of support is continuous and the husband's marital delinquency may not earlier terminate the obligation. The obligation must be correspondingly fulfilled out of the husband's contemporaneous faculties, whether in wealth, in moderate means, or in poverty. Within this gamut of fortune the wife shares. From the nature of affairs, change in tangible property and in income and in earnings may occur as well after as before the separation of the spouses.

Although the power to modify provisions of a decree in respect of future instalments of alimony is well settled in this state, and by the weight of authority of other jurisdictions, there is notwithstanding a conflict

of opinion in reference to overdue instalments. In a number of jurisdictions the view prevails that instalments of alimony become vested as they come due, and hence there is no power in the court to modify the decree in this respect. 17 *American Juris,* sec. 648, pp. 494-495.

The reasons in support of a modification of future instalments of alimony are only less in degree in reference to the instalments which have accrued due. There may have been error in the amount fixed because of mistake in the husband's faculties. The capacity to pay may be materially reduced either by unforeseen diminution in estate or by failure in earnings through incapacity, loss of position or of employment. When the failure to pay is attributable to such a cause, it is equitable to make a conformable modification in alimony which has accrued due. To deny a court of chancery such a power prevents the rectification of an obligation which would not have been created had the chancellor been able to anticipate the later faculties of the husband, and defeats the rule that the maintenance afforded the separated wife through alimony is not to be greater than what she would have enjoyed in cohabitation.

On reason the power of the court of equity to adapt its remedial relief to existing conditions and circumstances should not be curtailed. The flexible quality of its procedure is oppressively limited by the denial of redress for the chancellor's unforeseeably mistaken estimate of future faculties which the husband, without fault on his part, has not possessed in such a measure as to enable him to comply with the payment of the alimony imposed. Nor is it believed that there is to be found in this jurisdiction a rejection by the appellate court of this humane and equitable relief.

After a careful review and consideration of the decisions, the settled conclusion of this court is stated in the opinion written for the court by Judge Offutt in *Knabe v. Knabe,* 176 Md. 606, page 616, 6 A. 2nd 366, page 370, where it is said: "So that the law of this

state now is that where alimony is allowed in a decree awarding a divorce *a mensa* or *a vinculo*, or in a decree awarding alimony alone, the jurisdiction of the court as to alimony is continuing whether reserved or not, and so much of the decree as relates to the allowance of alimony may be from time to time changed, and the allowance increased or decreased or otherwise modified so as to conform to changed conditions." See *Winkel v. Winkel,* 176 Md. 167, 170, 4 A. 2nd 128; *McCaddin v. McCaddin,* 116 Md. 567, 82 A. 554; *Emerson v. Emerson,* 120 Md. 584, 591, 594, 87 A. 1033; *Wygodsky v. Wygodsky,* 134 Md. 344, 106 A. 698; *Hubbard v. Hubbard,* 131 Md. 291, 101 A. 772; *Fairbank v. Fairbank,* 169 Md. 212, 181 A. 233; *Braecklein v. Braecklein,* 136 Md. 32, 109 A. 546; *Dickey v. Dickey,* 1928, 154 Md. 675, 141 A. 387; *Marshall v. Marshall,* 1932, 162 Md. 116, 159 A. 260; *Id.,* 164 Md. 107, 163 A. 874; *Langrall v. Langrall,* 1924, 145 Md. 340, 125 A. 695; *Winchester v. Winchester,* 138 Md. 95, 113 A. 584; *Bowers v. Bowers,* 135 Md. 452, 109 A. 111; *Clarke v. Clarke,* 1926, 149 Md. 590, 131 A. 821; *Blades v. Szatai,* 151 Md. 644, 135 A. 841; see *Slacum v. Slacum,* 158 Md. 107, 110, 111, 148 A. 226; *Kriedo v. Kriedo,* 159 Md. 229, 232, 150 A. 720.

In *Braecklein v. Braecklein,* 1920, 136 Md. 32, 109 A. 546, the amended bill of complaint was for a divorce *a vinculo matrimonii;* and in its grant of this relief the chancellor decreed, on March 10th, 1919, that the husband pay to the wife a weekly specific amount of money, accounting from February 24th, 1919, as permanent alimony. The instalments of alimony accrued due weekly. Although the decree had become enrolled and contained no provision in terms expressly reserving the right to modify the alimony awarded, the chancellor, on August 1st, 1919, rescinded and vacated its award of alimony. One of the questions on appeal was the general power of the court to strike out of the decree the provision as to alimony. This court determined that a court of equity possessed the power "to modify that part of the decree providing for alimony, whether the decree grants

divorce *a vinculo* or *a mensa.*" 136 Md. page 38, 109 A.
page 548. The power to rescind, after enrolment, the
right to be paid instalments of alimony would necessarily
include the power to modify the allowance by a frac-
tional reduction. So, the decision cited affirmed the rule
that the power to modify by rescission or reduction was
inherent in a court of equity, and did not exist by reason
of an express reservation in the decree.

The later case of *Clarke v. Clarke,* 1926, 149 Md. 590,
131 A. 821, is one in which a decree for divorce *a mensa
et thoro* was obtained on January 31st, 1924. The chan-
cellor declared by the decree that the wife was not en-
titled to receive alimony. There was no provision for
a later application by the wife for alimony. The decree
became enrolled, and the wife did nothing for more than
a year. On May 28th, 1925, she filed a petition for a
modification of the decree by an allowance of alimony.
The basis of her application was the altered circum-
stances of the spouses: She set forth in her petition
the increased faculties of the husband and her own ill
health and resultant loss of employment and destitution.
The husband demurred to her petition on the ground that
these allegations were not of a nature to open the en-
rolled decree, which was a final adjudication that the
wife was not entitled to alimony. The demurrer was
sustained by the chancellor on these grounds, but the
ruling was reversed on appeal. This court there decided
that in respect of alimony the court exercised a continu-
ing jurisdiction, before and after an enrollment of a
decree, in cases of divorce *a mensa et thoro,* and would,
according to circumstances, and for cause shown, modify
the provisions of the decree with reference to alimony,
so that either the allowance, or disallowance, increase
or decrease, of alimony might be made according to the
determination of the court.

The rule exemplified in *Clarke v. Clarke, supra,* de-
pends upon the subsistence of the marriage status, and,
so, does not apply where the marriage relation is ter-
minated by a divorce *a vinculo matrimonii,* unless there

is a provision made for the payment of alimony. *Staub v. Staub*, 170 Md. 202, 204, 211, 183 A. 605; and *Marshall v. Marshall*, 1933, 164 Md. 107, 111, 163 A. 874; *Spear v. Spear*, 158 Md. 672, 149 A. 468; *Dickey v. Dickey*, 154 Md. 675, 141 A. 387; *Newbold v. Newbold*, 133 Md. 170, 104 A. 366; *Emerson v. Emerson*, 120 Md. 584, 87 A. 1033; *Bushman v. Bushman*, 157 Md. 166, 145 A. 488; *Winkel v. Winkel*, 176 Md. 167, 170, 4 A. 2nd 128; *Tabeling v. Tabeling*, 157 Md. 429, 437, 146 A. 389; *Marshall v. Marshall*, 162 Md. 116, 120, 159 A. 260. And it should be noted that the power of modification mentioned is restricted to provisions in a decree for the payment of alimony.

As thus limited, the rule has been given, in common practice in the chancelleries of this state, retrospective effect upon past due instalments of periodical payments of alimony, whether *pendente lite* or permanent. The practice here is founded on the practice of the ecclesiastical courts of England, whence our procedure largely came. *DeBlaquiere v. DeBlaquiere*, (1830) 3 Hag. Ecc. 322, 162 Eng. Reprint, 1173; *Saunders v. Saunders*, 1 Sw. & Tr. 72, 164 Eng. Reprint, 634; *Kerr v. Kerr*, (1897) 2 Q. B. Div. 439, 443; *Covell v. Covell*, (1872), L. R. 2 P. & D. 411, 413, 414.

The principle has been implicitly accepted by the court, but found not controlling on the facts, in the appeals of *Dickey v. Dickey*, 154 Md. 675, 141 A. 387; *Bushman v. Bushman*, 157 Md. 166, 145 A. 488; *Spear v. Spear*, 158 Md. 672, 159 A. 468; *Marshall v. Marshall*, 164 Md. 107, 163 A. 874; *Newbold v. Newbold* ,133 Md. 170, 104 A. 366; and *Emerson v. Emerson*, 120 Md. 584, 87 A. 1033, for the reasons that alimony was held not to be the subject matter of the litigation.

*Marshall v. Marshall, supra*, is particularly in point. In that case the allowance provided in the decree was for the sum of fifty dollars a month, to be paid by the husband to the wife, until her death or marriage, for the support of herself and the care, education and maintenance of their children, and, upon her death or mar-

riage, then over to children until death or marriage. The payments were made for several years and then discontinued because of the husband's inability to pay. Some years later the husband became entitled to a valuable interest in personalty in the course of distribution in the City of Baltimore. A large amount in the aggregate of the monthly payments was due the wife, who obtained an order, which fixed the amount in arrears and authorized an attachment and execution against the husband's interest. The chancellor later rescinded the order and disallowed the wife's claim for the payments in arrears, and relieved the defendant from further liability to make the payments formerly decreed, but reserved the right to require the resumption of the payments in the event of a change in the circumstances of the parties. In so holding, the chancellor proceeded upon the theory that the payments were alimony which could be modified by a court of equity from time to time. Thus on appeal the question turned upon the nature of the payments. If the decree were for alimony, the modification made by the chancellor was permissible. If the payments decreed were not alimony, the ruling of the chancellor was in error. The court there quoted from *Dickey v. Dickey,* 154 Md. 675, 141 A. 387, to this effect: "If, however, the allowance to the wife in the decree is the result of a previous agreement between the spouses and does not fall within the accepted definition of alimony, so that it would have been impossible for the chancellor to have allowed permanent alimony as the decree provides; then, notwithstanding the parties and even the court called it 'alimony,' the allowance for the wife in the decree was not alimony, and a court of equity has no power to modify the decree as in the case of an award of alimony." On the ground that the payments decreed were embodied in the decree by virtue of an agreement between the parties and did not possess the characteristics of alimony, the chancellor was reversed. *Roberts v. Roberts,* 160 Md. 513, 521, 522, 154 A. 95. In this negative form the decision of *Marshall v. Marshall, supra,* de-

clares the power in equity to modify the allowance of alimony in a decree for divorce in respect of past due instalments. See *Slacum v. Slacum,* 158 Md. 107, 110, 111, 148 A. 226; *Halsbury's Laws of England* (2nd Ed.), secs. 1267-1269, pp. 797, 798; *Blades v. Szatai,* 151 Md. 644, 646-649, 135 A. 841.

A more recent decision, *Fairbank v. Fairbank,* 169 Md. 212, 181 A. 233, affords an illustration of the practice in equity of suspending the payment of the arrears due under a decree of alimony, and the passage of an order in reduction of the original award as to future instalments. 169 Md. pages 220, 221, 181 A. 233. If the payment of the arrears of alimony may be suspended on cause shown, it is quite as much an alteration of the decree as would be a reduction in the amount of arrears. The power to suspend the payment of arrearages in alimony operates as retrospectively as would a modification in amount of past due alimony. See *Emerson v. Emerson,* 120 Md. 584, 592, 593, 87 A. 1033; *Tolman v. Leonard,* 6 App. D. C. 224; *Tolman v. Tolman,* 1 App. D. C. 299.

From a review of the decisions of this court, it does appear that the effect of its decisions is to support the power in the court to make a modification of a decree for alimony with respect to the unpaid instalments of past due alimony. If the contrary were held, it would be not only in conflict with sound practice, but also with the broad language of this court in a number of cases, and particularly with the theory upon which *Marshall v. Marshall, supra,* and *Fairbank v. Fairbank, supra,* were decided. In the examination of the decisions of this court, no decisions have been found in conflict with the views here expressed.

In *Marshall v. Marshall, supra,* the payments in arrears were held not to be alimony and so were excluded from the operation of the rule which would have permitted retroactive modification of the prescribed payments, if they had been alimony and not payments made pursuant to a contract of the parties, whose terms had

been approved by the court and embodied in the decree, 164 Md. pages 112, 114, 163 A. 874, page 877.

Another point decided was that continuing periodical instalment payments of money under a decree were not barred by limitations as to those which had severally become due within the twelve years next preceding the proceedings for enforcement. The court did not hold that the agreed periodical payment must be paid if without the statute of limitations, but carefully confined the application of the statute to "the amount of the unpaid instalments, and the existence of the conditions upon which its enforcement is dependent" as ascertained by an appropriate proceeding.

The rule of limitations stated in *Marshall v. Marshall, supra,* would seem to apply to the periodical instalments of alimony under a decree, to the extent that when such instalments separately became due the statute of limitations of twelve years began respectively to run severally as a bar to the enforcement of every such instalment, if it had accrued due and remained undischarged. In *Kalben v. King,* 166 Md. 632, 640, 172 A. 80, where alimony *pendente lite* was the subject matter, there is a *dictum* to that effect. In such event, the enforcement of the collection of the moneys due might continue to be by way of *scire facias,* attachment, execution or by other equitable remedies if within the period of limitations, but it seems to the court that, after the expiration of one year from the time the payment of any instalment of permanent alimony fell due and remained unpaid, there should be a bar to a proceedings for contempt against the contemnor in respect of any such default in payment. In the opinion written for the court by Judge Sloan in *Kalben v. King, supra,* there is a somewhat similar suggestion, and its adoption, as here stated, is supported by practical considerations in the administration of justice and by the fact that alimony is founded in the necessity, and the design, for current maintenance and support of the wife and children. The practice in England affords a basis for adoption. As

here stated and limited the rule is subject, however, to exceptions created by special circumstances, as absence of the husband from the jurisdiction or some other particular reasons shown. 2 *Bishop on Marriage and Divorce,* sec. 1098; *Kerr v. Kerr,* (1897), 2 Q. B. Div. 439, 66 L. J. Q. B. 838; *Wilson v. Wilson,* 5 Eng. Ecc. 129n; *Gresse v. Greese,* 1 Phillim, 210; *Lynde v. Lynde,* 64 N. J. Eq. 736, 52 A. 694; *Campbell v. Campbell,* L. R. (1922) Probate 187; *Watkins v. Watkins,* L. R. (1896), Probate 222, 223; *In re Robinson,* (1884) 27 Ch. D. 160, 165.

The decision in *Rosenberg v. Rosenberg,* 1927, 152 Md. 49, 135 A. 840, has no application to this record. In that case an action was brought in Maryland on a decree of a Virginia court of competent jurisdiction, requiring the defendant to pay his wife the sum of forty dollars a month as alimony. The decree on its face was final, and the action was for past due instalments of alimony. There was no testimony that the decree was subject in Virginia to modification or rescission. Hence, under the full faith and credit to be given the decree, the court could not presume that the right which the decree declared and secured was subject to an unexpressed and unproved power of revocation. The court stated that these were the reasons which, under the ruling of the Supreme Court of the United States in *Sistare v. Sistare,* 218 U. S. 1, 30 S. Ct. 682, 54 L. Ed. 905, entitled the plaintiff to recover on the decree for the unpaid arrears of alimony. Such a decree, under the circumstances stated, was presumed to be a final decree of the state of its origin, and actionable. 3 *Freeman on Judgments* (5th Ed.), sec. 1447, pp. 2980, 2981.

Both *Rosenberg v. Rosenberg, supra,* and *Sistare v. Sistare, supra,* are, also, authority for the rule that the finality of a decree for alimony depends upon the law of its rendition. If not final there, it is not final elsewhere. Should the decree be subject to modification it is not a final decree. As the decree in the instant case is subject to modification, it lacks the necessary quality of

finality, and the cases last cited, which were on a different record and had a different problem, have no application. *Supra*: *Yarborough v. Yarborough*, 290 U. S. 202, 212, 54 S. Ct. 181, 78 L. Ed. 269, 276; *Barber v. Barber*, 21 How. 582, 16 L. Ed. 226; *Lynde v. Lynde*, 181 U. S. 183, 21 S. Ct. 555, 45 L. Ed. 810; *Bower on Res Judicata*, sec. 3, pars. 150, 151, pp. 96, 97. See *Wetmore v. Markoe*, 196 U. S. 68, 71-73, 25 S. Ct. 172, 49 L. Ed. 390.

In *Audubon v. Shufeldt*, 181 U. S. 575, at page 578, 21 S. Ct. 735, at page 736, 45 L. Ed. 1009, Justice Gray, delivering the opinion, wrote: "And, as the Court of Appeals of the District of Columbia has more than once said: 'The allowance of alimony is not in the nature of an absolute debt. It is not unconditional and unchangeable. It may be changed in amount, even when in arrears, upon good cause, shown to the court having jurisdiction.' (*Tolman v. Leonard*), 6 App. D. C. (224) 233; (*Alexander v. Alexander*), 13 App. D. C. (334) 352."

The court has not ignored the weight to be accorded the decisions of other jurisdictions to the effect that instalments of alimony become vested when they become due, and the court has no power to modify the decree with reference to them. Without attempting to analyze and distinguish these cases, it is sufficient to make reference to where many of these decisions may conveniently be found, and to state that this court is not convinced that the practice and precedents of this state should be discarded. *Supra*. See 94 *A. L. R.* 332; *Gloth v. Gloth*, 154 Va. 511, 153 S. E. 879; *Gilcrease v. Gilcrease*, 186 Okl. 451, 98 P. 2nd 906; 17 *American Jurisprudence*, title *Divorce and Separation*, sec. 648; *Ann. Cas.* 1914 A 303.

With the principles ascertained and in mind, the court, thus advised and governed, has weighed the testimony and finds no sufficient basis for any modification of the decree of the court in reducing the alimony to four dollars a week from and after October 5th, 1937. Nor does the court disagree with the confirmation by the equity court of the rate of twelve dollars a week before October

5th, 1937. This was the periodical payment specified in the original decree of May 23rd, 1925. At no time has the husband paid this instalment or any part of it to the wife. By reason of her refusal to comply with the condition of this decree to convey certain property to her husband, her right to alimony was suspended by the decree until September 14th, 1931. From this date the installments accrued due and accumulated, and although unpaid, no action appears to have been taken until September 11th, 1933, when the wife addressed a petition to the court. She stated her husband's default but that, until shortly before this petition, he had paid her twenty-five dollars weekly as rental for premises which belonged to her and on which he had conducted a filling station. She recited that he had ceased to pay the rent, and that she was thereby left without means of support. Her prayer was for an increase in the amount of alimony to be paid. The husband resisted her right to receive alimony on the ground of her failure to execute the grant to him as prescribed in the original decree of May 23rd, 1925. Failing in this by the refusal of the court, on May 7th, 1934, to dismiss the wife's petition, the husband filed a "cross-bill" for divorce on May 21st, 1934. He dismissed his bill on June 2nd, 1934, and on the same day filed a new "cross-bill" which was disposed of by dismissal by the court on August 21st, 1935. It was not until December 31st, 1935, that the court, after the taking of testimony, refused to modify its decree by increasing the amount of alimony, on the ground that the husband's faculties were not shown to be sufficient. The award of twelve dollars a week remained undisturbed, but the husband's default continued, notwithstanding the repeated efforts of the wife, until that of October 5th, 1937, became the final petition, and the one, with the proceedings thereunder, which is now before this court.

The husband has consistently refused to obey the decree of the court and has successfully defeated in the past the efforts of the wife to obtain his compliance. His

attitude entitles him to no special consideration, and his contumacy precludes him from successfully seeking an abatement for his default in payment which occurred before October 5th, 1937, as it does not clearly and certainly appear that his lessened faculties, rather than recalcitrancy, were the cause of his uninterrupted refusal to pay a single instalment, or even a part of it, to his wife. See *Skirven v. Skirven*, 154 Md. 267, 140 A. 205. Nor has the husband, in seeking equity, done equity. The rate of twelve dollars a week before October 5th, 1937, awarded by the court of equity, must stand. The court, however, has fixed the period of arrearages as extending from September 11th, 1931, to October 5th, 1937. Unquestionably the husband did not pay the instalments of alimony once during the length of time, but the wife collected a weekly rental of twenty-five dollars from him for his occupancy for business purposes of an improved lot of hers until shortly before September 11th, 1933, when she applied for an increase in the allotment of alimony. By this petition she did not seek the enforcement of the payment of the back instalments which had then accrued due, but directed her effort to procure a larger award. The testimony indicates that the rental paid was in excess of the rental value of the property and that, in connection with the confinement of the relief sought by the wife to future instalments, induces the belief that the wife had waived the payment of the then accrued due instalments. The conclusion of the court is, therefore, that the payment of the weekly sum of twelve dollars should be restricted to the period included between September 11th, 1933, to October 5th, 1937, which will require a reversal in part of the order passed in reference to this matter.

Second. The solicitors for the wife are entitled to reasonable fees for their services at the expense of the husband. *McClees v. McClees,* 160 Md. 115, 130, 152 A. 901. The court ordered the husband to pay them $250 for their services to the wife in connection with the appeal to this court of the husband from the order passed

on May 20, 1938, overruling a demurrer entered by the husband to the petition and amended petition of the wife. The ruling was affirmed in *Winkel v. Winkel,* 176 Md. 167, 4 A 2nd 128. The court is of the opinion that the allowance should be reduced to seventy-five dollars. The husband was further ordered to pay the solicitors of the wife fifty dollars for their services in the proceedings in the chancery court to determine the alimony due to the wife. The order passed will be affirmed, as it is a reasonable compensation. By a third order the husband was directed to pay an additional fee of $150 to the solicitors of the wife for their services in the pending appeals. The court is of the opinion that seventy-five dollars is a fair and proper fee, and that the allowance should be reduced to that sum. In all other respects, the three orders last mentioned are approved.

The cause must be remanded for the passage of such orders as may be necessary to carry into effect the views here expressed.

> *Order of September 2nd,* 1939, *directing Bernard A. Winkel to pay Marian I. Winkel the sum of four dollars a week as permanent alimony from October 5th,* 1937, *is affirmed.*
>
> *Order of September 2nd,* 1939, *passed upon the order nisi of April 13th,* 1939, *is affirmed in part and reversed in part, so that the order directing Bernard A. Winkel to pay $250 as compensation to Charles S. Hayden and Elmer Carleton Smith, solicitors of Marian I. Winkel, may be reduced to the payment of seventy-five dollars.*
>
> *Order of September 2nd,* 1939, *decreeing that the arrears of alimony due and payable by Bernard A. Winkel to Marian I. Winkel is the sum of $3785.14, accounting from September 11th,* 1931,

512

to October 5th, 1937, *reversed, and cause remanded so that the arrears of alimony due and payable shall be computed at the rate of twelve dollars a week accounting from September 11th, 1933, to October 5th, 1937, without interest.*

*Order of September 2nd, 1939, directing that Bernard A. Winkel pay the sum of fifty dollars to Charles S. Hayden and Elmer Carleton Smith, solicitors, as additional fees, affirmed.*

*Order of November 14th, 1939, affirmed in part and reversed in part, so that the order directing Bernard A. Winkel to pay the sum of $150 to Charles S. Hayden and Elmer Carleton Smith, solicitors, as additional fees for the pending appeals be reduced to the payment of the sum of seventy-five dollars.*

*Cause remanded for further proceedings in conformity with this opinion. The costs in all appeals to be paid by Bernard A. Winkel.*